# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

TABITHA L.,[1]

                            Plaintiff,

        v.                                    3:24-CV-476
                                                (AJB/MJK)

LELAND DUDEK,
Acting Commissioner of Social Security

                         Defendant.

---

HOWARD D. OLINSKY ESQ., for Plaintiff
NAHID SOROOSHYARI ESQ., Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE ANTHONY J. BRINDISI, U.S. District Judge:

## REPORT- RECOMMENDATION

Plaintiff commenced this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Commissioner of Social Security's final decision denying his application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 5) so the Honorable David N. Hurd, Senior U.S. District Judge, referred this matter to the Court for Report and

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

Recommendation under 28 U.S.C. § 636(b) and Local Rule 72.3(d).[2] Both parties filed briefs (Dkts. 9, 13, 14) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.     PROCEDURAL HISTORY

On August 6, 2021, Plaintiff applied for Supplemental Security Income under Title II alleging disability beginning July 2, 2008. (T. 11).[3] Her claim was initially denied on November 3, 2021, and upon reconsideration on January 19, 2022. (*Id.*). Administrative Law Judge ("ALJ") John Ramos held a telephonic hearing on May 16, 2023. (T. 11-24). At this hearing, non-attorney representative, Kevin Dwyer represented Plaintiff. (T. 11). Both Plaintiff and impartial vocational expert, Jeroen Walstra testified. (T. 39-56; 58-65). On July 5, 2023, the ALJ issued an unfavorable decision. (T. 8-24). Plaintiff timely appealed by filing the operative complaint. (Dkt. 1).

## II.    GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking Disability Insurance or Supplemental Security Income benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable

---

[2] On December 19, 2024, this case was reassigned from Senior District Judge Hurd to District Judge Brindisi.
[3] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. Plaintiffs have the burden of establishing disability at the first

four steps. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). If they establish

that their impairment prevents them from performing their past work, the burden

then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

When reviewing a final decision of the Commissioner, courts must

determine whether the correct legal standards were applied and whether substantial

evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin.,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It

must be "more than a scintilla" of evidence scattered throughout the administrative

record. *Id.* But this standard is a very deferential standard of review "—even more

so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine

on appeal whether an ALJ's findings are supported by substantial evidence,

reviewing courts consider the whole record, examining the evidence from both

sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988). However, reviewing courts may not substitute its

interpretation of the administrative record for that of the Commissioner if the

record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Plaintiff's medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and Plaintiff's hearing testimony in its analysis of the parties' claims, as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step-sequential analysis, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 6, 2021" (T. 13).

At step two, the ALJ determined that Plaintiff suffered from several severe ailments: "obesity, tinnitus, fibromyalgia, lumbar radiculopathy, osteoarthritis of

the right knee, goiter, asthma, allergic rhinitis, depressive disorder, and anxiety disorder" (*Id.* at 13) (citations omitted). At the same step, he found that the "record was devoid of objective medical evidence to establish bilateral tendinitis as one of" Plaintiff's "medically determinable impairments." (*Id.*).

At step three, the ALJ determined that Plaintiff did not have a single impairment, or combination of impairments, that equaled the severity of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (T. 14).

The ALJ also discussed the "paragraph B" criteria. (T. 15). "To satisfy the paragraph B criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (*Id.*). These areas of functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

Here, the ALJ found that Plaintiff had a mild limitation on her ability to understand, remember, or apply information, no limitation on her ability to interact with others, a moderate limitation on her ability to concentrate, persist, or maintain pace, and a moderate limitation on adapting or managing herself. (T.14-15). As a result, the paragraph B criteria were not met. *Id.*

Next, the ALJ discussed the "paragraph C" criteria. (T. 15). Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c).

The ALJ found that Plaintiff did not satisfy the paragraph C criteria because "the evidence failed to establish the presence of the 'paragraph C' criteria. The record did not evidence only 'marginal adjustment'" Plaintiff "was able to attend her appointments without documented problems." (T. 15) (cleaned up).

Subsequently, the ALJ determined that Plaintiff has the residual function capacity (RFC) to:

> perform medium work as defined in 20 CFR 416.967(c) except she can sit for up to five hours in an eight hour day, stand for up to five hours in an eight hour day, and walk for up to five hours in an eight hour day. She would need to change positions from sitting to standing and vice versa approximately every 60 minutes. She can frequently climb ramps and stairs, should not climb ladders and scaffolds, can continuously balance, and can frequently stoop, kneel, crouch, and crawl. The claimant should avoid exposure to noise levels greater than medium as defined in the DOT and the SCO and should not be exposed to concentrated respiratory irritants or extremes of temperature. The claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and

independently, maintain attention/concentration for simple tasks, and regularly attend to a routine and maintain a schedule. The claimant can frequently interact with coworkers and supervisors throughout the workday to the extent necessary to carry out simple tasks. She can have frequent brief interaction with the public and can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work. The claimant should work in a position where she is not responsible for the work of or required to supervise others. She should work in a position with little change in daily work processes or routines.
 (T. 15-16).

In making the RFC determination, the ALJ stated that he "considered all" of Plaintiff's symptoms and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (T. 16). He also noted that he considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 416.920c. (*Id.*).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" (T. 22) (internal citation omitted).

But at step five, the ALJ held that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 24).

Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, from the onset date through the decision date. (*Id.*).

V.    **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ's decision should be reversed and remanded because the ALJ erred by failing to: (1) "properly consider Plaintiff's fibromyalgia" and (2) "reconcile his mental health findings in the paragraph B criteria . . . with the limitations he assessed in the RFC determination." (Pl. Br. at 9, 12) (cleaned up). In opposition, the Commissioner argues that the ALJ properly considered Plaintiff's fibromyalgia and all other record evidence when making his determination. (Def. Br. at 5-16).

VI.    **DISCUSSION**

For the reasons below, the Court recommends finding that the ALJ: (1) considered Plaintiff's fibromyalgia in his decision; (2) did not properly analyze Plaintiff's fibromyalgia, which caused an erroneous supportability and consistency analysis; and (3) properly determined that Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace limited her to simple work.

### A. The ALJ's decision considered Plaintiff's fibromyalgia.

The Court recommends finding that the ALJ considered Plaintiff's fibromyalgia. On one hand, Plaintiff argues that the ALJ did not consider her fibromyalgia. (Pl. Br. at 9-10). On the other, the Commissioner argues that the ALJ considered Plaintiff's ailment. (Def. Br. at 9-12). This Court agrees with the Commissioner. The ALJ's decision considered Plaintiff's fibromyalgia.

In his decision, the ALJ cited several sources which discussed Plaintiff's fibromyalgia. First, the ALJ cited Dr. Rachel Lu-Do when considering Plaintiff's ailment. Dr. Lu-Do, in her March 3, 2021 assessment of Plaintiff, noted that Plaintiff "has a longstanding history of generalized pain, fatigue, stiffness, and sleep disturbance" (T. 343) (cleaned up). At this time, Plaintiff was not in acute distress, had no muscle asymmetry or atrophy, had full range of motion in her shoulders, elbows, and wrists, and no swelling "of the MCP, PIP, DIP, wrist, elbow or shoulder joints bilaterally." (T. 342). But Plaintiff reported "3-4 out of 10" pain in her knee. (T. 341).

During their next meeting, Dr. Lu-Do noted that Plaintiff suffered from "diffuse pain" in her "upper and lower back" (T. 335). Plaintiff again reported "3-4 out of 10" pain in her knee. (T. 335). But like their first meeting, Plaintiff had no muscle asymmetry or atrophy and had full range of motion in her hips. (T. 337). Dr. Lu-Do also noted "soft tissue tenderness" in Plaintiff's "bilateral suprascapular regions, latissimus dorsi muscles, and lumbar paraspinal muscles bilaterally" and "mild tenderness of the right 2nd PIP joint" and "minimal swelling." (*Id.*). Plaintiff also suffered from numbness and tingling in the right hand. (T. 336).

During Plaintiff's June 2021 appointment with Dr. Lu-Do, she reported "significant fatigue, unrefreshing sleep, and diffuse pain" in her "upper and lower back." (T. 328). Notably, Plaintiff reported right leg muscle spasms. (T. 329).

Those "leg spasms" occurred when she engaged in "long periods of sitting" or "driving" (*Id.*).

Next month, Plaintiff reported "fatigue, unrefreshing sleep, morning stiffness, and muscle pain [in] the lower back, hip[s] . . . and [upper thigh area]." (T. 323). While there was "no persistent joint swelling," Plaintiff continued to have episodic leg spasms in her right leg. (T. 323) (cleaned up). During this visit, Plaintiff rated her pain "6 out of 10" (*Id.*).

In their last meeting, Plaintiff noted "generalized pain" in her "neck, lower back, upper shoulders, knees, [and] hips." (T. 617). She also had "muscle pain, muscle cramps, and back pain." (*Id.*) (cleaned up). Dr. Lu-Do noted tenderness in Plaintiff's "left suboccipital muscle insertion, gluteal regions over the SI joints, greater trochanteric bursal regions bilaterally, lateral epicondyles bilaterally[,] and right knee proximal to the medial joint line" (T. 619). But like the earlier appointments, Plaintiff did not have any muscle asymmetry or atrophy. (*Id.*). Similarly, Plaintiff had full range of motion in both hips and no joint inflammation "of the shoulder, elbow, wrist, MCPs, PIPs, DIPs, or knee joints bilaterally." (*Id.*).

Second, the ALJ cited consultative examiner Courtney Grace Crocket, M.D., when discussing Plaintiff's fibromyalgia. In her exam, Dr. Crocket noted that Plaintiff suffered from knee joint deterioration, and recently discovered that she suffered from spinal deterioration in her "cervical and lumbar regions." (T. 459).

Plaintiff also reported "6/10" pain on both sides of her body. (*Id.*). But she was not in acute distress. (T. 461). While Plaintiff declined to walk on her right heel because it was painful, she could walk on her left heel and toes without difficulty and could squat roughly 70 percent. (*Id.*). Plaintiff needed no help changing for the exam or getting on and off the exam table, and she was "able to rise from the chair without difficulty." (*Id.*). Dr. Crocket, like Dr. Lu-Do, found that Plaintiff had full range of motion in her shoulders, elbows, wrists, hips, knees, and ankles bilaterally. (T. 462). Yet, Plaintiff's joints were "tender to palpation specifically" on the right shoulder. (*Id.*). Likewise, Plaintiff had "8 of the 18 points" of tenderness on the "fibromyalgia examination" (*Id.*).

Third, the ALJ relied on Dr. Mahmoud Awad's finding that Plaintiff was not in acute distress, when discussing her fibromyalgia—even though he evaluated Plaintiff for tinnitus. (T. 18) *referring to* (T. 481).

Finally, the ALJ cited Dr. Karen Banks-Linder, D.O. findings when discussing Plaintiff's fibromyalgia. (T.18).[4] Dr. Banks-Linder, in her assessment, noted that Plaintiff had no signs of acute distress, the left side of her neck was stiff, her left trapezius was tender, but there was no tenderness in Plaintiff's arms or legs. (T. 510-11).

---

[4] The ALJ miss named Dr. Karen Banks-Linder as Dr. Jessica Banks-Linder. (T. 21).

* * *

Taking the decision on its face, the ALJ considered Plaintiff's fibromyalgia. The ALJ spent almost an entire page discussing the information that *could* be relevant to fibromyalgia. *See, e.g.* (T. 18) (acknowledging that Plaintiff had tenderness in eight of the 18 points on the fibromyalgia examination) citing (T. 462); *see also Soc. Sec. Ruling, Ssr 12-2p; Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2P, 2012 WL 3104869 at *3 (S.S.A. July 25, 2012) (noting that the 1990 American College of Rheumatology criteria for classifying fibromyalgia required 11 out of 18 positive tender points). As a result, the ALJ considered Plaintiff's fibromyalgia.

### B. The ALJ's supportability and consistency analysis was flawed because the ALJ improperly analyzed Plaintiff's fibromyalgia.

The ALJ did not, however, properly analyze Plaintiff's fibromyalgia. Because fibromyalgia is a disease that evades objective measurement, ALJs need not rely on objective tests. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Here, Plaintiff argues that "the ALJ's failure to properly consider Plaintiff's fibromyalgia also permeated his analysis of the medical opinion evidence." (Pl. Br. at 11). In opposition, the Commissioner argues that the ALJ's analysis was proper because he focused on both objective and subjective factors in his analysis. (Def. Br. at 10). This Court agrees with Plaintiff. Objective evidence predominated the

13

ALJ's cursory supportability and consistency analysis. That was improper. As a result, the Court recommends reversing the ALJ's decision.

Fibromyalgia is "a disease that eludes" objective "measurement." *Green-Younger*, 335 F.3d at 108. "There are no objective tests which can conclusively confirm the disease." *Id.* (internal citations omitted). So "'objective findings are not required to find that an applicant is disabled." *Id.* (internal citation omitted). As a result, ALJs cannot "rely solely on objective evidence—or lack thereof—related to fibromyalgia;" they "must consider all relevant evidence, including the longitudinal treatment record." *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326 at *3 (N.D.N.Y. Apr. 23, 2020) (cleaned up).

The ALJ's flawed understanding of fibromyalgia affected his supportability and consistency analysis. To begin, the ALJ found Dr. Lu-Do's opinion less persuasive because "it was not supported" by "an explanation" or "by her treatment notes, which documented *limited positive clinical findings*." (T. 20) (emphasis added). The Court is unclear what "limited positive clinical findings" the ALJ is specifically referring to because he does not explain what they are. But if he is referring to his entire discussion of the limited positive clinical findings— which contains findings made by doctors other than Dr. Lu-Do— then the ALJ's reliance on objective evidence is misplaced. *See Davidow v. Astrue*, No. 08-CV-6205T, 2009 WL 2876202, at *4 (W.D.N.Y. Sept. 2, 2009) ("Fibromyalgia has

been recognized as a disorder that is not easily detected with standard clinical tests").

The ALJ relied on objective evidence only to discredit Plaintiff's fibromyalgia. In his decision, the ALJ discussed Plaintiff's clinical findings from March 2021 to March 2023. In this section, the ALJ, noted that "the claimant had limited positive physical clinical findings," and consistently repeated that Plaintiff had "no acute distress," "full range of motion," and "no acute synovitis" (joint inflammation). (T. 18). But listing the lack of positive findings and the emphasis on a lack of "acute" signs or symptoms, ignores how fibromyalgia afflicts people. "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have *normal physical examinations, e.g.,* full range of motion, no joint swelling, normal muscle strength and *normal neurological reactions.*" *Campbell v. Colvin*, No. 5:13-CV-451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (emphasis in original). Yet, the ALJ, and Commissioner, placed significant emphasis on Plaintiff's normal physical examinations. This Court's case law does not allow that. *See id*; *see also Anysha M.*, 2020 WL 1955326 at *3.

The ALJ also misunderstood the difference between acute and chronic pain, and that mistake permeates the ALJ's analysis. Acute pain "comes on suddenly and

is caused by something specific."[5] Chronic pain "is pain that is ongoing and usually lasts longer than six months" and is the type of pain associated with fibromyalgia. *Id.* Applying the proper definitions here, Plaintiff's pain is chronic because she was diagnosed with fibromyalgia in 2020 (so the pain "has probably been persistent for much longer."). (T. 459); *see also Green-Younger,* 335 F.3d at 101, fn. 1 (identifying chronic musculoskeletal pain as a symptom of fibromyalgia). Because Plaintiff was dealing with chronic pain, a provider would not find that she was suffering from acute pain. So they would note that she is not in acute distress. In fact, when she first met Dr. Lu-Do, Plaintiff reported "chronic pain." (T. 340); *see also* (T. 472) (defining Plaintiff's pain as chronic and persistent). As a result, the ALJ improperly relied on Plaintiff not being in acute distress to undermine Plaintiff's chronic pain.

The ALJ's reliance on the lack of objective evidence was also misguided. The Commissioner argues that the ALJ was entitled to rely on objective evidence. *See* (Def. Br. at 6) citing SSR 12-2P, 2012 WL 3104869 at *2; *see also* (Def. Br. at 8) citing *Butler v. Comm'r of Soc. Sec.*, No. 1:16-CV-0500 (TWD), 2017 WL 2834482 at *8 (N.D.N.Y. June 29, 2017) ("Given that Plaintiff's main documented impairment was one which does ordinarily require objective evidence of

---

[5] *Acute v. Chronic Pain*, CLEVELAND CLINIC, (Dec. 8, 2020)
https://my.clevelandclinic.org/health/articles/12051-acute-vs-chronic-pain

symptoms, it was not unreasonable for the ALJ to consider the objective evidence when determining the RFC and weighing the opinion evidence, despite the presence of fibromyalgia."). But the Commissioner's reliance on *Butler* is misplaced. Here, unlike like the Plaintiff in *Butler*, Plaintiff's primary complaint is fibromyalgia. (T. 72) *See also Butler*, 2017 WL 2834482 at *8 (noting that the plaintiff's primary impairment was her lumbar spine impairment). So the ALJ should not have placed excessive reliance on objective tests and the lack of objective findings. In fact, the ALJ was supposed to do the opposite. *See Campbell*, 2015 WL 73763, at *5. As a result, *Butler* does not support the ALJ's decision.

The ALJ erred when assessing Dr. Lu-Do's medical opinion. Contrary to the ALJ's reasoning, Dr. Lu-Do's findings were supported by and consistent with the record. Dr. Lu-Do found that Plaintiff had eight tender points on her body. (T. 472). Likewise, Dr. Grace also found that Plaintiff had eight tender points on her body. (T. 461). State consultants A. Vinluan, M.D., S. Naroditsky, M.D., and Dr. Crocket, like Dr. Lu-Do, all noted that Plaintiff ranked her pain as a six on a scale of 1-10. (T. 77, 94, 323, 459). Taken together, Dr. Lu-Do's findings were supported by and consistent with the record.

Further, the ALJ erred while assessing the 'relationship with the claimant' factor. While analyzing that factor, the ALJ gave Dr. Lu-Do's medical opinion less weight because in September 2021 the treatment relationship was "short." (T. 20).

But such an analysis ignores the fact that Plaintiff kept seeing Dr. Lu-Do, and the doctor's March 2023 analysis of Plaintiff, presented findings similar to her September 2021 findings. (T. 617- 671). In short, the ALJ's decision to cabin the length of Plaintiff and Dr. Lu-Do's treatment relationship was error. *See Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) ("The ALJ cannot pick and choose evidence in the record that supports his conclusions") (internal citation omitted); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010) ("Essentially, the ALJ cherry-picked several opinions that were supportive of her decision and disregarded the majority of the medical evidence in the record."). All in all, the ALJ erred when assessing Dr. Lu-Do's medical opinion.

Like Dr. Lu-Do's findings, Dr. Lindor-Banks' findings were also supported by and consistent with the record. Dr. Lindor-Banks found that Plaintiff could not: (1) sit for more than one hour at a time before needing to stand; (2) stand for more than one hour before needing to sit down; and (3) stand or sit for more than two hours in an eight-hour-work day. (T. 606-7.). Similarly, Dr. Lu-Do also determined that Plaintiff could not: (1) sit for more than one hour before needing to get up; (2) stand for more than one hour before needing to sit; and (3) sit or walk for more than two hours in an eight-hour-work day. (T. 472). In sum, there is support for both doctors' findings. And while these findings differ with the findings of Drs.

Vinluan and Naroditsky, who both determined that Plaintiff could stand or walk for six hours in an eight-hour workday, the ALJ erred by relying on the consultative examiners. (T. 76, 97).

There are two issues with the ALJ's decision to credit the state consultative examiners over the Plaintiff's doctors. First, the ALJ failed to explain how Drs. Vinluan and Naroditsky's conclusions were supported by and consistent with the record. The ALJ found both doctors opinions "generally persuasive" because they were "supported by an explanation" and were "generally consistent with other evidence in the of record, including the negative clinical findings and the claimant's activities." (T. 20). In essence, the ALJ's supportability and consistency analysis is Drs. Vinulan and Naroditsky's findings are consistent with the record because they are consistent with the record. That tautology is a procedural error. *See Locuks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *2 (2d Cir. 2020) ("the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record . . . the ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.").

And second, to the extent that the ALJ's statement, "including the negative clinical findings and the claimant's activities," is considered an explanation, the Court finds it insufficient. (T. 20). At the administrative hearing, the vocational

expert testified that Plaintiff could not perform her past work because "the job would require more than five hours of standing and walking" (T. 59). In fact, the ALJ's decision adopted that finding. (T. 22). Yet, the ALJ found Drs. Vinluan and Naroditsky's findings supported by and consistent with the record. In sum, the ALJ is relying on Plaintiff's past work to determine that Drs.Vinluan and Naroditsky findings are correct, while relying on the vocational expert's testimony, that Plaintiff could not stand or walk for six hours in a workday to support a finding that Plaintiff was unable to do her past work. (T. 20, 59). But that cannot be. If Plaintiff is unable to perform her past work because she cannot stand or walk for six hours, the consultative examiners findings that she could do those things must be wrong. The ALJ cannot have his cake and eat it to. Thus, Drs.Vinluan and Narodistksy's findings are unsupported by and inconsistent with the record.

Contrary to the ALJ's decision, and the Commissioner's argument, Plaintiff's reported activities are not enough to sustain the ALJ's RFC determination. *See* (*Def. Br.* at 9-10) citing *Tamara B. v. Comm'r of Soc. Sec.,* 3:18-cv-0422 (TWD), 2019 WL 2410798, at *10 (N.D.N.Y. June 7, 2019) (finding that "while the ALJ may have noted a lack of clinical and objective findings, he did not rely solely on this aspect of the record in finding plaintiff was not disabled or in determining her RFC. Rather, he additionally pointed to… plaintiff's reported activities."). The Commissioner reliance on *Tamara B.* is misguided. While the

*Tamara B.* court identified the plaintiff's daily activities as part of the subjective evidence the ALJ permissibly relied on, it also noted that the plaintiff worked for several years after the onset date, took care of another disabled person herself, and the plaintiff's reports of pain "seemed out of proportion" *Tamara B.*, 2019 WL 2410798, at \*10. Here that is not the case. The only subjective factor that the ALJ relied on was Plaintiff's daily activities. In effect, the ALJ's reasoning was Plaintiff is not disabled because she is not an invalid. And that line of reasoning is impermissible. *See Colgan v. Kijakazi,* 22 F.4th 353, 363 (2d Cir. 2022) (Acknowledging that "'a claimant need not be an invalid to be found disabled' under the Social Security Act.") citing *Balsamo v. Chater*, 142 F.3d 75 (2d Cir. 1998).[6]

Like Drs. Vinluan and Naroditsky, Dr. Crocket's findings are unsupported and inconsistent with the record. The only doctor that determined that Plaintiff could sit and stand five hours in an eight-hour workday for 20 minutes at a time is Dr. Crocket. (T. 465). As a result, the doctor's statement is not supported by or consistent with the record.

\* \* \*

---

[6] To be sure, ALJs can consider plaintiffs daily activities. *See Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). But as a matter a public policy, a plaintiff's decision to take care of their children should not be held against them in an assessment of whether they are disabled. Indeed, courts should not find that someone is not disabled because they are a good parent.

The ALJ's error was not harmless. "Although the Court finds the ALJ committed procedural error, this is not the end of the analysis." *Daniel M. S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-379 (BKS/TWD), 2025 WL 957411 at *4 (N.D.N.Y. Mar. 31, 2025). The Court must consider whether the error was harmless. *See Loucks*, 2022 WL 2189293 at *2. Here, the ALJ's misunderstanding of fibromyalgia affected his supportability and consistency analysis. A proper analysis of the disease would lead to a different RFC determination. As a result, the ALJ's error was not harmless.

Although the Court should find that the ALJ considered Plaintiff's fibromyalgia, the ALJ still erred in his analysis of it. In consequence, this Court recommends reversing the ALJ's decision because the ALJ did not properly analyze the ailment.

### C. The ALJ properly determined that Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace limited her to simple work.

Plaintiff argues that the ALJ did not consider her moderate limitations in concentrating, persisting, and maintaining pace when forming her RFC. The Commissioner, to the contrary, argues that the ALJ found that Plaintiff was limited to simple work because he considered Plaintiff's moderate limitations. The Court agrees with the Commissioner. As a result, it recommends finding that the ALJ

properly considered Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace when forming her RFC.

"When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for such limitations." *Bartell v. Comm'r of Soc. Sec.*, No. 5:13-CV-843 (GLS/ESH), 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (cleaned up). "The mental activities generally required by competitive, remunerative, unskilled work are understanding, remembering, and carrying out simple instructions; making simple work-related decisions, responding appropriately to supervision co-workers and usual work situations, and dealing with changes in a routine work setting." *Id.* at *3, fn. 6. (cleaned up). Thus, when an ALJ determines that a plaintiff has "a certain amount of difficulty with concentration, persistence, or pace" the ALJ is accounting for those limitations by limiting the claimant to work requiring simple instructions and directions. *Rodriguez v. Colvin,* No. 13–CV–6360, 2014 WL 3882191, at *17 (W.D.N.Y. Aug.6, 2014).

Here, the ALJ determined that Plaintiff has the "the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently maintain attention/concentration for simple tasks, and regularly attend to a routine and maintain a schedule." (T. 15-16). And contrary to Plaintiff's

argument, this determination did not vanish from the ALJ's analysis. The ALJ, addressing the supportability and consistency of Amanda Slowik, Psy.D.'s, opinion, noted that "while" Plaintiff has "some complaints of depression and anxiety" her medical records "did not show any the existence of significant disabling functional limitations. (T. 22) (cleaned up).

Even if the Court finds that this analysis was wrong, the error was harmless. Here, "a searching review of the record" can assure the Court "that the substance of the regulation was not traversed." *Daniel M. S.*, 2025 WL 957411 (N.D.N.Y. Mar. 31, 2025). The ALJ analyzed supportability and consistency of Dr. Slowik's findings, and did the same for M. D'Ortona, Psy.D. and S. Bhutawala Ph.D., who the ALJ found generally persuasive "as to the lack of disability function limitations." (T. 22). At bottom, every mental health provider found that Plaintiff did not have disabling limitations. Thus, any procedural error is harmless.

## V. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that Plaintiff's motion for judgment on the pleadings (Dkt. 9) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation.

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: May 5th, 2025

Digitally signed by
Mitchell J Katz
Date: 2025.05.05
10:51:42 -04'00'

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge